[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this limited contested dissolution matter, the plaintiff seeks a dissolution of marriage, a distribution of marital assets and a restoration of her maiden name. By cross-complaint the defendant seeks the same relief. In determining its orders the Court is cognizant of and considers the provisions of General Statutes § 46b-81(c). The following findings and orders are made: CT Page 8998
The parties intermarried at Broad Brook, Connecticut on May 5, 1988. The defendant has been a resident of this state for at least twelve months next preceding the date of the filing of the complaint. There are no minor children issue of the marriage and neither is receiving financial assistance from any state agency. The Court has jurisdiction in this matter.
Both parties were represented by counsel and offered testimony in this case. Based on the testimony and evidence, the Court finds that the marriage has broken down irretrievably and orders it dissolved on said grounds.
At her request, the plaintiff's maiden name, Judith Rittlinger, is ordered restored to her.
Both parties have expressly waived any claim for alimony and alimony is not awarded to either.
The point of contention is a jointly owned residence known, as 165 Chamberlain Road, East Windsor, Connecticut. Each party seeks ownership and has made proposals as to the consideration to be given to the other.
The house was built in 1990 on a four acre parcel given to the parties by the plaintiff's father. It took almost one year before building to get the necessary zoning and inland wetland approvals. Extensive site preparation was required including the crossing of a brook, foundation excavation and completion of a driveway approximately 1680 feet in length. The equipment costs and almost all of the labor cost for this work was donated by the husband's brother-in-law who was in the excavating business.
Much of the labor involved in erecting the house was also donated by the husband's friends and his father, including, at least in part, framing, concrete work, siding, painting and landscaping.
The parties took out a $99,000 construction mortgage which was then converted into a permanent mortgage. That money was spent in the construction costs.
The wife's father provided some labor as well, in the installation of the heating and cooling systems, but his contribution of labor was substantially less than of the husband's CT Page 8999 family and friends. Weighing the contributions of land and labor is necessarily imprecise, but it does appear that there was a reasonable degree of parity between the sides.
From the evidence presented, the Court finds that a substantial factor in the breakdown of the marriage was an affair the wife had with a friend and co-worker of the defendant. In September 1992, the plaintiff left the marital home telling the husband she was going to Colorado for a couple of weeks to see a friend and to "clear her head." About one week later the wife called her husband telling him that Darin (the husband's co-worker) was there and that she was going to stay in Colorado. She indicated she had no interest in the marital home and the husband could stay there. At some point the wife moved in with Darin in Colorado and the husband remained in the marital home paying the mortgage, taxes, insurance and maintenance on the property. While the mortgage balance was modestly reduced during this period of time, the defendant did rent a room out for some months during the same period for $350.00 or $400.00 per month.
Because of these offsetting claims, the Court will make no adjustment in favor of or against either party.
The Court finds from the credible testimony that the property in question has a present fair market value of $165,000. The current unpaid principal mortgage balance is approximately $96,000, thus the equity is approximately $69,000.
Considering the requests of the parties in light of all the circumstances discussed herein, the Court orders as follows:
The husband shall have the first option of purchasing the wife's right, title and interest in the jointly owned property known as 165 Chamberlain Road, East Windsor, Connecticut upon payment to her of $31,000 within ninety days. This sum reflects approximately 45% of the equity in the property. The wife shall cooperate in executing any documentation necessary to effectuate the refinancing of the mortgage to the husband's name.
If the husband is unwilling or unable to exercise his option to buy, the wife shall have the second option of purchasing his right title and interest in said property upon payment to him of $38,000 within ninety days after the expiration of the husband's option period or notification to the wife that the husband will not exercise his option, whichever is sooner. This sum reflects 55% of CT Page 9000 the equity in said property. The husband shall cooperate in executing any documentation necessary to effectuate the refinancing of the mortgage to the wife's name in the event the secondary option comes into play.
Either party may request an extension of their respective option period for cause.
If neither party exercises their option to buy, then the property shall be sold by listing it with a real estate broker agreed upon by the parties. The net proceeds after the expenses of the sale shall be divided with 55% to the husband and 45% to the wife.
The husband shall be responsible for the mortgage payment as long as he resides in the house. The wife shall be responsible for such payments if she obtains occupancy.
The parties shall retain the personal property which they either brought into the marriage or which was given to them from their respective families.
The parties shall be responsible for the liabilities shown on their respective financial affidavits.
The husband shall retain the 1982 Chevrolet pickup truck, and the wife her 1989 Hyndai automobile.
Klaczak, J.